Filed 5/19/25  Hernandez v. Nunez CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| FRANCISCO J. HERNANDEZ, | |
| Plaintiff and Respondent, | E083404 |
| v. | (Super.Ct.No. CVRI2000490) |
| ADRIANA NUNEZ et al., | OPINION |
| Defendants and Appellants. | |

APPEAL from the Superior Court of Riverside County.  Chad W. Firetag and Samuel Diaz, Jr., Judges.  Affirmed as modified.

Law Office of Randy K. Bell and Randy K. Bell for Defendants and Appellants.

No appearance for Plaintiff and Respondent.

Plaintiff and respondent Francisco J. Hernandez (Tenant) sued defendants and appellants Adriana Nunez (Nunez) and Nunez Plaza LLC (Plaza).  Against Nunez, Tenant brought causes of action for breach of contract and negligent misrepresentation.

1

Against both Nunez and Plaza (collectively, Owners) Tenant brought causes of action for unjust enrichment and conversion.

The trial court denied Owners' motion to set aside their default. (Code Civ. Proc., § 473.5.)[1] The trial court entered a default judgment against Owners, awarding Tenant $200,249.22 in damages, costs, and attorney fees. Owners moved to set aside the default judgment (§ 473, subd. (d)), and the trial court denied that motion.

Owners appeal from the default judgment and the denial of their motion to set aside the default judgment.[2] Owners raise six contentions. First, Owners assert the trial court erred by denying, as untimely, their motion to set aside their default. (§ 473.5.) Second, Owners contend the trial court erred by not setting aside the judgment as void due to a lack of service of the complaint and summons. Third, Owners assert the trial court erred by awarding damages in excess of those pled in the complaint. Fourth, Owners contend the trial court erred by not apportioning damages. Fifth, Owners assert the trial court erred by awarding attorney fees. Sixth, Owners assert the trial court erred by entering the default judgment when the complaint fails to allege a complete cause of action. We affirm the judgment as modified.

---

[1] All subsequent statutory references will be to the Code of Civil Procedure unless otherwise indicated.

[2] The notice of appeal reflects that Owners are also appealing from the order denying their motion to set aside their default (§ 473.5), but that is not an appealable order. (*Scognamillo v. Herrick* (2003) 106 Cal.App.4th 1139, 1146.) We can, however, review contentions pertaining to the denial of the motion to set aside the default (§ 473.5) within this appeal from the default judgment. (*Scognamillo*, at p. 1146.)

2

**FACTUAL AND PROCEDURAL HISTORY**

A.      COMPLAINT

        1.     *BREACH OF CONTRACT*

Nunez is the sole member and chief executive officer of Plaza. There are two contracts involved in this case. The first contract is a lease between Tenant and Plaza (the Lease). Tenant leased 3,800 square feet of warehouse space and 21,700 square feet of parking lot space from Plaza. The term of the Lease was three years beginning June 1, 2020. Tenant intended to use the space "to run a food truck commissary business."

The second contract was for Tenant to buy business assets from Nunez (the Agreement). In the Agreement, Tenant agreed to pay Nunez $100,000 in exchange for "the city permits, blueprints, [and] health department plans for a commissary business owned by [Nunez]." Tenant paid Nunez $100,000 in May 2020. In July 2020 Tenant learned that there were no active permits for the leased premises. Tenant's lawyer contacted Nunez about the issue. Nunez was not interested in resolving the lack of permits.

        2.     *CONVERSION*

When Tenant's lawyer contacted Nunez about the permit issue, Nunez said Plaza would seek to evict Tenant because he had ceased paying rent. Nunez sent Tenant a Notice of Right to Reclaim Abandoned Property, which included items such as two refrigerators and construction equipment.

3

In Tenant's complaint, he alleged that he had purchased a forklift from Owners for approximately $17,000, and it should have been included on the abandoned property list, but it was not. Tenant alleged that Owners told him the forklift was missing. Tenant asserted Owners "intentionally converted [Tenant's] forklift for their own benefit and use."

### 3. DAMAGES

For the breach of contract cause of action, Tenant's complaint sought damages "including but not limited to [Tenant's] $100,000 payment at the time of execution, $30,000 paid in rent and security deposit on a property he could not use, improvements to a property he could not use, [Tenant's] 'missing' forklift valued at $17,000, plus consequential damages according to proof at the time of trial, totaling no less than $170,000." For the conversion cause of action, Tenant sought $17,000 for the forklift.

### 4. PROOF OF SERVICE

On August 18, 2021, at 3:18 p.m., Steve Mundy (the Process Server), who is a registered process server, served Owners with the complaint and summons. The service occurred at a residence on Round Tree Court (the Round Tree Residence). Nunez and the Round Tree Residence are listed with the Secretary of State as the person and place for service of process on Plaza.

### B. DEFAULT

### 1. ENTRY OF DEFAULT

On October 18, 2021, Tenant requested entry of Owners' default, and it was entered the same day. On November 29, 2021, Tenant requested the trial court enter a

default judgment against Owners. A copy of the request for judgment was mailed to Owners at the Roundtree Residence, on November 30, 2021. The request for judgment reflected that the court had already entered Owners' default. The request for judgment was not granted because the court clerk returned the paperwork to Tenant—it is unclear why the document was returned.

2. *MOTION TO SET ASIDE THE DEFAULT*

One year later, on October 19, 2022, Owners moved to set aside their default. (§ 473.5.) Nunez declared that in December 2020 there was a flood in the Round Tree Residence; she moved out of the Round Tree Residence and she did not move back. Thus, Nunez was not residing at the Roundtree Residence when the Process Server served the summons and complaint on August 18, 2021. However, Nunez "kept some animals and other items" at the Round Tree Residence, but it was mostly Nunez's husband who visited the Round Tree Residence after the flood. Owners contended they never received notice of Tenant's complaint.

3. *OPPOSITION*

In opposing Owners' motion, Tenant provided the Process Server's declaration. The Process Server declared that he "made numerous attempts to serve Adriana Nunez at her [Round Tree Residence]. Either the door was not answered, or the door was slammed on my face." The Process Server declared that, on August 18, 2021, he saw Nunez exiting the Round Tree Residence's driveway. He recognized Nunez from a photograph and description. He approached Nunez and said " 'Adriana Nunez', but she

5

said she was not Adriana Nunez but held out her hand. [The Process Server] then placed the Summons [and] Complaint in her hand."

### 4.     *REPLY*

In response, Owners contended their motion to set aside their default should be granted because Tenant's attorney failed to inform Owners' attorney of the impending default.

### 5.     *RULING*

The trial court issued a tentative ruling denying the motion to set aside the default. The trial court explained that Tenant's request for entry of judgment was mailed to Owners in November 2021, which notified Owners their default had already been entered. The trial court found the request for judgment constituted notice of the entry of default, which means the clock started for moving to set aside the default. Owners' motion to set aside the default was filed in October 2022, which is more than 180 days after November 2021, thereby making the motion untimely. (§ 473.5, subd. (a).)

The trial court also found the motion failed on its merits. The trial court explained that the Process Server's proof of service created a rebuttable presumption that Owners were served as set forth in the proof of service. The trial court found that Nunez's declaration failed to rebut the presumption because she did not declare that

"she was not 'served,'[3] nor denies having been served at 3:18 p.m. on 8/18/21 as the process server alleges. Nunez explains about the leak and then says she 'only visited the property a few times after moving out.' [Citation.] There is no declaration that one of those times was not 8/18/21 at 3:18 p.m."

As to Tenant's attorney not warning Owners' attorney about the impending default, the trial court asserted that if Tenant's attorney violated that ethical duty, then Owners' motion to set aside would still be untimely and Nunez's declaration would still be too short on details.

Neither party requested oral argument, so the trial court's tentative ruling denying the motion became its ruling.

C.     JUDGMENT

1.     *REQUEST FOR ENTRY OF JUDGMENT*

In August 2023, Tenant requested entry of a default judgment in the amount of $200,249.22. In a declaration, Tenant declared he paid Nunez $100,000 when they signed the Agreement; Tenant paid $6,000 for a security deposit; he paid June and July rent totaling $12,000; he spent $50,025 on ice machines; he bought $5,659.22 of construction supplies; and he bought a forklift for $17,000. In September 2023 the trial court entered a default judgment against Owners in the requested amount of

---

**3** At oral argument in this court, Owners asserted the trial court erred in its reading of Nunez's declaration because, in Nunez's declaration, she expressly denied having been served. Owners are correct. In Nunez's declaration, she declared, "Throughout this time, I was not aware that [Tenant] had filed suit against me or [Plaza]. I had not been served with the summons or complaint on this matter, nor had I received any notification by mail."

$200,249.22. The judgment divides the amount as follows: $190,684.22 for damages, $9,000 for attorney fees, and $565 for costs.

## 2. *MOTION TO SET ASIDE THE JUDGMENT*

In November 2023 Owners moved to set aside the default judgment. (§ 473, subd. (d).) Owners asserted that, in August 2021, the Process Server dropped the complaint and summons on the ground near Nunez's 16-year-old daughter; Nunez was not present. The motion was supported with a declaration by Nunez, who declared that, after reading the Process Server's declaration, she watched the Process Server's August 2021 interaction with her daughter on a video surveillance recording. Nunez's daughter also submitted a declaration recounting her interaction with the Process Server; she declared that she "was not given any documents" by the Process Server. Owners lodged a cell phone video recording of the video surveillance recording with the trial court.

## 3. *OPPOSITION*

In opposition, Tenant argued that Owners' video lacked a date stamp. Tenant provided the declaration of the Process Server, who declared that he watched the video lodged by Owners, and he denied that it was him in the video. The Process Server declared that the person in the video could be seen dropping an envelope out of a van, but when the Process Server served Nunez, he exited his vehicle, walked toward her, and handed her the papers. In his multiple attempts to serve Nunez, the Process Server noticed that Nunez had "a Ring surveillance device" at the Round Tree Residence. Tenant provided Ring's video retention policy, which is to retain videos for 60 to 180 days. Videos are automatically deleted after 180 days.

8

4.	*RULING*

The trial court issued a tentative ruling denying Owners' motion to set aside the default judgment.  The trial court concluded that Owners failed to establish the date of the video recording.  The trial court pointed to the following evidence to support its conclusion that evidence of the date was needed:  (1) the Process Server denied that it was him in the video, and (2) Nunez claimed to have watched the video after reading the Process Server's declaration, which was dated November 21, 2022, but the video of the service would have been from August 18, 2021, which is beyond the 180-day period for automatic deletion of Ring videos.  The trial court concluded that, without evidence of the date the video was made, it could not conclude that the video was from August 18, 2021.

A hearing was held on the motion, and arguments were made, but the record does not include a reporter's transcript.  The tentative ruling to deny the motion became the trial court's ruling.

## DISCUSSION

A.	MOTION TO SET ASIDE THE DEFAULT

1.	*TIMELINESS*

Owners contend the trial court erred by denying as untimely their motion to set aside their default (§ 473.5).  We apply the abuse of discretion standard of review. (*Rios v. Singh* (2021) 65 Cal.App.5th 871, 885.)

9

A defendant moving to set aside a default must do so within 180 days of being served with notice of entry of the default. (§ 473.5, subd. (a).) The trial court clerk entered Owners' default on October 18, 2021. The record does not include a notice of entry of default or a proof of service for a notice of entry of default. In opposing the motion to set aside the default, Tenant provided as an exhibit his November 2021 request for entry of judgment. The trial court found Owners received notice of the entry of default from the request for entry of judgment that was mailed to Owners in November 2021, showing that their default had been entered in October 2021.

The exhibit provided by Tenant is not a conformed copy, but the register of actions reflects a request for entry of judgment and a proof of service were filed in November 2021. Therefore, the trial court could have reasonably accepted the exhibit as evidence that the request for entry of judgment was filed and served in November 2021. (*Drummond v. Desmarais* (2009) 176 Cal.App.4th 439, 447, fn. 3; *RGC Gaslamp, LLC v. Ehmcke Sheet Metal Co., Inc.* (2020) 56 Cal.App.5th 413, 418, fn. 2.) The request for entry of judgment was mailed to Owners at the Roundtree address. Nunez declared that her mail was forwarded from her Roundtree address to her business address. Thus, one could reasonably find that, by December 2021, Owners had received notice of the entry of their default.

Owners did not file their motion to set aside their default until October 2022. December 2021 to October 2022 is more than 180 days. Therefore, Owners missed the 180-day deadline for filing the motion after receiving notice of the entry of default. We

10

conclude the trial court did not abuse its discretion by denying Owners' motion as untimely.

Owners contend that the request for entry of judgment did not expressly reflect that a default had been entered against them. Contrary to Owners' assertion, the request for entry of judgment reads, "Default entered as requested on (*date*): 10/18/2021." Therefore, the request for entry of judgment clearly provided that Owners' default had been entered.

Alternatively, Owners assert that if the request for entry of judgment did notify them of the entry of default, then "it is clear that [Owners] were not served with [the request for entry of judgment] for the simple reason that they no longer lived at the [Round Tree Residence]." First, Nunez declared that her mail was forwarded from the Roundtree residence to her business, so she would have received the mail despite moving. Second, Nunez declared that (a) she kept animals at the Roundtree residence after she moved out, and (b) the repairs to the Roundtree residence "took nearly a year to complete," i.e., December 2020 to December 2021. Thus, Nunez was still in active possession of the Roundtree residence if the request for entry of judgment arrived there in December 2021, as opposed to being forwarded to her business address.

## 2. *REMAINING CONTENTIONS*

As to their motion to set aside their default (§ 473.5), Owners further contend the trial court erred by denying the motion because (1) Tenant's attorney did not warn counsel of the impending default; and (2) Owners successfully rebutted the presumption that they were served with the summons and complaint. These contentions are moot

11

because Owners' motion was untimely. (*Schoshinski v. City of Los Angeles* (2017) 9 Cal.App.5th 780, 791 [issue is moot when no effective relief can be granted].)

### B. MOTION TO SET ASIDE THE JUDGMENT

#### 1. *LACK OF SERVICE*

##### a. Contention

Owners contend the trial court erred by denying their motion to set aside the judgment as void (§ 473, subd. (d)) for lack of service of a summons.

##### b. Motion for Reconsideration

Owners' first motion—to set aside the entry of their default (§ 473.5)—was based on the assertion that Owners were not served with the summons and complaint. In denying that motion, the trial court found that the motion was untimely and failed on the merits. The trial court concluded, "The declaration Nunez offered with this motion does not rebut the presumption of proper service."

Owners' second motion—to set aside the default judgment (§ 473, subd. (d))—was again based upon the argument that they were not served with the summons and complaint. The problem with that argument is that the issue had already been decided by the trial court. "[T]he question as to whether [Owners] had been legally served with summons was judicially determined on conflicting evidence on the first motion and [was] not . . . open to question" when moving to set aside the judgment. (*Riskin v. Towers* (1944) 24 Cal.2d 274, 276.)

Owners' motion to set aside the judgment was effectively a motion for reconsideration based on new evidence. (§ 1008, subd. (b).) When making such a

12

motion, "the moving party must provide a ' " 'satisfactory explanation for the failure to produce that evidence at an earlier time.' " ' (*Shiffer v. CBS Corporation* (2015) 240 Cal.App.4th 246, 255.) We apply the abuse of discretion standard when reviewing the denial of a motion for reconsideration. (*Ibid.*)

In the first motion (§ 473.5), Owners argued that service did not occur because Nunez did not reside at the Round Tree Residence. In the second motion (§ 473, subd. (d)), Owners asserted that Nunez read the Process Server's declaration in opposition to the first motion, found a surveillance video from the day of service, and saw that the summons and complaint were dropped near Nunez's daughter. Owners failed to explain why the video was not lodged with their reply to the opposition to the first motion (§ 473.5). Because Owners did not explain why they were unable to provide the evidence during the first motion (§ 473.5), the motion for reconsideration was properly denied.

c.     Lack of Foundation

The motion to set aside the judgment (§ 473, subd. (d)) was also properly denied if one did not treat it as a motion for reconsideration. Owners contend the trial court erred in finding they failed to prove they were not served with the summons and complaint because, while Owners' video did not have a date stamp, it had a time stamp of 3:16 p.m., and the Process Server declared he served Nunez on August 18, 2021, at 3:18 p.m.

"When, as here, the trial court considers disputed evidence related to whether service was proper, our review is for abuse of discretion." (*First American Title Ins. Co. v. Banerjee* (2022) 87 Cal.App.5th 37, 42.) A video is a writing. (Evid. Code,

13

§ 250.)  The party introducing a writing must lay a foundation "of evidence sufficient to sustain a finding that it is the writing that the proponent of the evidence claims it is." (Evid. Code, § 1400.)  " 'The fact conflicting inferences can be drawn regarding authenticity goes to the [writing's] weight as evidence.' " (*People v. Goldsmith* (2014) 59 Cal.4th 258, 267.)

The Process Server declared that it was not him in the video exhibit because he did not drop documents from a van.  Tenant provided evidence that the Ring surveillance video would have been automatically deleted by the time it was allegedly watched by Nunez.  The trial court could reasonably find that this evidence detracted from the weight of Owners' evidence to the point that it was impossible to conclude the video depicted events from August 18, 2021.  Because the trial court's determination was reasonable, the court did not abuse its discretion.

Owners contend that Tenant's evidence "was insufficient and forged."  Specifically, Owners assert that the Process Server's declaration in support of the opposition to the motion to set aside the judgment (§ 473, subd. (d)) has a forged signature.

In Owners' reply to Tenant's opposition to the motion to set aside the judgment (§ 473, subd. (d)), Owners argued that the Process Server's declaration failed to prove Owners were served because (1) the Process Server declared that the woman he served said she was not Nunez, and (2) the photograph that the Process Server used to identify Nunez was "a grainy black and white photograph."  No claim of forgery was raised in the trial court.  Instead, Owners are asking this court to make an original finding pertaining to forgery.  In particular, Owners ask this court to examine and compare the

14

Process Server's various signatures and conclude that the signature on the declaration is a forgery. Owners' request is denied because this court does not make original findings of fact when reviewing a ruling on a motion. (See *Piscitelli v. Friedenberg* (2001) 87 Cal.App.4th 953, 983 [factual issues are not decided for the first time on appeal]; *Henry v. Alcove Investment, Inc.* (1991) 233 Cal.App.3d 94, 100-101 [same].)

### 2. AMOUNT OF DAMAGES

Owners contend the trial court erred by denying their motion to set aside the judgment as void because the amount of damages awarded in the judgment is greater than that alleged in the complaint.

"The relief granted to the plaintiff, if there is no answer, cannot exceed that demanded in the complaint." (§ 580, subd. (a).) "A default judgment greater than the amount specifically demanded in the complaint is void as beyond the court's jurisdiction." (*Airs Aromatics, LLC v. CBL Data Recovery Technologies, Inc.* (2018) 23 Cal.App.5th 1013, 1018.) The jurisdictional limit on awarding no more than the amount sought in the complaint "is to ensure that a defendant is given adequate notice of the amount of the judgment that may be entered against the defendant, as required by due process. [Citation.] A defendant who is denied adequate notice of the amount of the default judgment that may be entered against the defendant is effectively denied a fair hearing. [Citations.] A default judgment resulting from the denial of a fair hearing in this manner is void." (*Matera v. McLeod* (2006) 145 Cal.App.4th 44, 61.)

In the complaint, Tenant alleged damages of "at least $170,000," which means the default judgment damages cannot exceed $170,000. In the judgment, the trial court

15

awarded Tenant damages of $190,684.22. We will modify the damage award to be $170,000. (*Ostling v. Loring* (1994) 27 Cal.App.4th 1731, 1743) ["Ordinarily when a judgment is vacated on the ground the damages awarded exceeded those pled, the appropriate action is to modify the judgment to the maximum amount warranted by the complaint"]; see also *Greenup v. Rodman* (1986) 42 Cal.3d 822, 829-830 [modifying the amount of a default judgment].)

### 3. *ATTORNEY FEES*

Owners contend that the trial court erred by awarding $9,000 in attorney fees because the Agreement did not include a provision for attorney fees.

Attorney fees can be awarded when authorized by contract, statute, or law. (§ 1033.5, subd. (a)(10).) Owners are correct that the Agreement does not include a provision for attorney fees. The Lease between Tenant and Plaza permits an award of attorney fees, but the terms of the Lease were not at issue in this case. Accordingly, the trial court erred by awarding attorney fees because there was no authority for the award. We will modify the amount of attorney fees to $0.

### 4. *APPORTIONMENT OF DAMAGES*

In a single sentence, Owners contend the judgment is void because it does not apportion the damages amongst Owners. "Under the equitable indemnity doctrine, defendants are entitled to seek apportionment of loss between the wrongdoers in proportion to their relative culpability so there will be 'equitable sharing of loss between multiple tortfeasors.' " (*Gem Developers v. Hallcraft Homes of San Diego, Inc.* (1989) 213 Cal.App.3d 419, 426.)

16

Owners provide no authority or reasoned argument for their position that a default judgment would be void due to a lack of apportionment. Accordingly, we deem this issue forfeited. (*County of Butte v. Emergency Medical Services Authority* (2010) 187 Cal.App.4th 1175, 1196, fn. 7.) To the extent Owners intended to directly attack the default judgment as erroneous for not apportioning damages, that argument is also forfeited due to a lack of reasoned legal discussion to support the contention. (*Ibid.*)

### C.      DEFAULT JUDGMENT

Owners contend the default judgment is void because the complaint fails to state a claim for relief. We reframe Owners' contention to focus on the default judgment, rather than the motion to set aside the judgment as void (§ 473, subd. (d)): Owners contend the trial court erred in entering the default judgment because the complaint fails to state a claim for relief. (See *Falahati v. Kondo* (2005) 127 Cal.App.4th 823, 830 ["[A] default judgment is not necessarily void just because it is based on a complaint which fails to state a cause of action"].)

A default judgment " 'has the same effect as an express admission of the matters well pleaded in the complaint.' " (*Kim v. Westmoore Partners, Inc.* (2011) 201 Cal.App.4th 267, 281.) Due to that admission, the plaintiff need not provide other evidence to prove the allegations. (*Ibid.*) However, "if the well-pleaded allegations of the complaint do not state any proper cause of action, the default judgment in the plaintiff's favor cannot stand." (*Id.* at p. 282; see also *Grappo v. McMills* (2017) 11 Cal.App.5th 996, 1015.) We apply the de novo standard of review when determining

17

whether a complaint alleges sufficient facts to state a cause of action. (*Lee v. Hanley* (2015) 61 Cal.4th 1225, 1230.)

## 1. *BREACH OF CONTRACT*

"[T]he elements of a cause of action for breach of contract are (1) the existence of the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to the plaintiff." (*Oasis West Realty, LLC v. Goldman* (2011) 51 Cal.4th 811, 821.)

The breach of contract cause of action was alleged against Nunez. As to the existence of a contract: The Agreement between Tenant and Nunez is titled "Agreement of Purchase and Sale of Business." The Agreement includes the following terms: "[Tenant] agrees to buy and [Nunez] agrees to sell to [Tenant] as a going concern the City Permits, Blueprints, Health Department Plans for a Commissary Business owned by [Nunez]." (Boldface omitted.) In a section of the Agreement titled "Closing Documents," it reads, "[Nunez] shall deliver to [Tenant], in registrable form where applicable, the following: [¶] a) The delivery of the City Permits, Blueprints, and Health Department Plans." (Boldface omitted.)CT 18} The Agreement is a contract because it sets forth the terms for a purchase of permits and plans between two parties.

Owners assert, "It is unclear what is meant by 'City Permits.' " The Agreement reads, "[Tenant] agrees to buy and [Nunez] agrees to sell to [Tenant] as a going concern the City Permits, Blueprints, Health Department Plans for a Commissary Business owned by [Nunez]." (Boldface omitted.) That sentence means Nunez had the permits

18

necessary for operating an ongoing commissary business, and she was selling those permits to Tenant. Accordingly, we are not persuaded that "city permits" is unclear.

As to Tenant's performance: Tenant alleged he performed by paying Nunez $100,000 when they signed the Agreement. In regard to Nunez's breach: Tenant alleged Nunez breached the contract because she did not have permits for a commissary business. When Tenant's lawyer contacted Nunez about the issue, she said Plaza would evict Tenant. Thus, Nunez implied that she would not be giving Tenant any permits and plans. Accordingly, Tenant sufficiently plead breach by Nunez.

Owners contend that Nunez was a party to the Agreement, but Plaza was not, so Plaza did not breach the Agreement. As noted *ante*, the breach of contract cause of action was only alleged against Nunez, so Owners are correct.

In regard to damages: Tenant alleged he was damaged by the breach because "he had already invested approximately $170,000 to start a business, under the assumption that the permits had already been obtained and there was no barrier to launching the business. He would never had executed the Sale Agreement without Defendant Nunez's representation that the permits were in place. [¶] Furthermore, if [Tenant] had known the permits were not in place, [Tenant] would never have executed the Lease Agreement. Nor would he have spent over $10,000 purchasing items and making improvements to Nunez's property." Tenant's allegations reflect he was damaged because (1) he gave Nunez money for permits and plans that he never received, and (2) he spent money on building a business that he could not operate without the promised permits. (See *Speirs v. BlueFire Ethanol Fuels, Inc.* (2015) 243 Cal.App.4th 969, 989

19

[damages for breach of contract include direct and consequential damages].) Thus, Tenant has sufficiently pled damages.

Owners contend Tenant failed to allege that he was unable to obtain the necessary permits or operate his business without them. To the extent Owners are asserting a lack of mitigation, Tenant did not need to plead mitigation. Failure to mitigate is an affirmative defense that Owners would have had the burden to allege and prove if they had filed an answer in this case. (*Parker v. Twentieth Century-Fox Film Corp.* (1970) 3 Cal.3d 176, 180-182.)

To the extent Owners are asserting a lack of causation, the argument fails. "An essential element of a claim for breach of contract are damages resulting from the breach." (*St. Paul Fire and Marine Ins. Co. v. American Dynasty Surplus Lines Ins. Co.* (2002) 101 Cal.App.4th 1038, 1060.) Tenant pled, "[Nunez's] breach of the Sale Agreement has caused [Tenant] damages . . . including but not limited to [Tenant's] $100,000 payment at the time of execution, $30,000 paid in rent and security deposit on a property he could not use, improvements to a property he could not use, [Tenant's] 'missing' forklift valued at $17,000, plus consequential damages according to proof at the time of trial, totaling no less than $170,000." Tenant's complaint includes allegations that Nunez's breach was the proximate cause of Tenant's damages.

In sum, Tenant made sufficient allegations to support all the elements of a breach of contract claim against Nunez.

## 2. *CONVERSION*

Tenant claimed conversion of a forklift against both Nunez and Plaza. " ' "The elements of a conversion claim are: (1) the plaintiff's ownership or right to possession of the property; (2) the defendant's conversion by a wrongful act or disposition of property rights; and (3) damages." ' " (*Welco Electronics, Inc. v. Mora* (2014) 223 Cal.App.4th 202, 208.)

As to ownership: Tenant alleged that he purchased the forklift from Owners, which meant Tenant owned the forklift. In regard to a wrongful act by Owners: Tenant alleged that Owners "knowingly and intentionally converted [Tenant's] forklift for their own benefit and use," which means the forklift was wrongfully taken by Owners. As to damages: Tenant alleged that he paid $17,000 for the forklift and no longer had a forklift, so he was damaged in the amount of $17,000. In sum, Tenant made sufficient allegations to support a conversion claim against Owners.

## 3. *CONCLUSION*

We have concluded *ante* that there are sufficient allegations to support a breach of contract cause of action against Nunez and a conversion cause of action against Nunez and Plaza. As to Tenant's other two causes of action—unjust enrichment against Owners and negligent misrepresentation against Nunez—we do not examine whether they are sufficiently pled because the judgment can stand due to the breach of contract and conversion causes of action being adequately pled.

21

## DISPOSITION

The amount of damages is modified to $170,000.  The amount of attorney fees is modified to $0.  In all other respects, the judgment and order denying the motion to set aside the judgment are affirmed.  Appellants are to bear their own costs on appeal.[4] (Cal. Rules of Court, rule 8.278(a)(3).)

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

MILLER _____

Acting P. J.

We concur:

CODRINGTON _____

J.

RAPHAEL _____

J.

---

[4] We order Appellants to pay their own costs on appeal because Tenant did not make an appearance in this court.